Shilknecht, *et al.* Lessee *vs.* Eastburn's Heirs.—1830.

---

JACOB SHILKNECHT, *et al.* LESSEE, *vs.* EASTBURN'S HEIRS.—*June,* 1830.

To give a deed legal effect and operation, as a deed under a decree of the Court of Chancery, a copy of the record ought to be produced, to show the trust reposed in the grantor, and his legal performance of it.

Although a deed cannot have legal operation as a deed under a decree of Chancery, without producing the record, yet it shall be taken most

strongly against the grantor; and such legal interest as he had, capable of being transferred, may pass thereby.

In 1752, a patent was granted for a tract of land called P, containing 50 acres. In 1754, another patent was granted for a tract called *Resurvey of P*, containing 375 acres. They were issued to the same grantee; and in 1791, his heirs conveyed a tract called *P*, containing *375 acres*, to certain persons, their heirs and assigns in trust. In an action of Ejectment for a tract of land called the *Resurvey of P*, the lessor of the plaintiffs claimed title from the surviving trustee, under a deed for a part of the last mentioned tract, which described the part conveyed by metes and bounds, and professed to be executed in pursuance of a decree in Chancery. No decree was produced, nor any evidence that the aforesaid tracts of land were the same, in fact, but called by different names. HELD, That the deed of 1791 could only convey to its grantees, the trustees, the tract P, according to its original lines, metes, and bounds, and that they could transfer no title to land claimed in this action.

A location of a tract of land by one party in Ejectment, not counterlocated by the other, is admitted to be correct; that is, that the land is correctly *described on the plots;* but it does not admit the title to the land.

To recover in Ejectment, when defence is taken on warrant, the plaintiff must shew the true position of the land by location, and also that he has a legal right to the land thus located.

The law is well established, that facts to aid a title may, in some cases, be presumed.

The law will always lean to the presumption that a trustee has faithfully executed his trust.

Every fair legal presumption ought to be allowed in favor of a judicial sale, where the purchase money has been *bona fide* paid.

A trustee in the year *1795*, under a decree of the Court of Chancery, sold certain real estate, and returned a report of the sale and proceedings, upon which the Chancellor passed the usual order of confirmation *nisi*. In 1803, the trustee executed a deed to the purchaser, which recited the sale, its ratification, and the payment of the purchase money. It did not appear from the record of the proceedings in Chancery, that the sale had been *finally* ratified. The deed of the trustee being relied upon as evidence of title in the year 1826, HELD, That the jury might, and ought, to presume that the return of the sale, as reported by the trustee, had been finally ratified and confirmed.

APPEAL from *Frederick* County Court.

Ejectment for a tract of land called the *Resurvey on Panmure,* lying in *Frederick* county. The declaration contained counts on the joint and separate demises of the lessors to the plaintiff, on the 2d of January, 1812, for

twenty years.  The defendant, *Robinson Eastburn*, whose heirs at law the appellees are, appeared after his death, and entered into the common rule, and took defence on warrants, and pleaded not guilty, to which issue was joined. A warrant of resurvey was issued, and plots were returned, with sundry depositions of witnesses taken on the survey.

1. At the trial, the plaintiff gave in evidence to the jury, the plots and explanations filed in this cause; also the patent for the tract of land called *Panmure*, granted to *John Cary* on the 30th of November, 1752, for 50 acres; also the patent for the tract of land mentioned in the declaration, called *The Resurvey on Panmure*, granted to *John Cary* on the 4th of July, 1754, for 375 acres.  The plaintiff also proved, that *John Cary*, the patentee of the tract of land called *Panmure*, and also the patentee of the tract of land called *The Resurvey on Panmure*, was dead, leaving *John D. Cary*, *Robert T. Cary*, *William Cary* and *Elizabeth Cary*, as his only children and heirs at law; that *Elizabeth* died without issue.  The plaintiff further gave in evidence a deed from the said *John D.*, *William* and *Robert T. Cary*, to *Jacob Young* and *George French*, executed after the death of the said *John Cary*, the patentee of the said land, and also executed after the death of the said *Elizabeth*, dated the 8th of August, 1791, whereby they conveyed "to the said *George French* and *Jacob Young*, their heirs and assigns, the three following tracts or parcels of land: *Zero*, containing 53 acres, *Panmure*, containing 375 acres, and part of *Palentine*, containing 178 acres; all lying between *Catoctin* and *South* mountains in *Frederick* county aforesaid, reference being had to the said patents and deeds will more fully appear."  In trust that the said *French* and *Young* "and their heirs, shall dispose of the fee simple in the said three tracts or parcels of land, in convenient time, for the best price that they can obtain, and within a reasonable time after the disposal thereof, divide the monies therefrom arising among the said *William Cary* and *Robert T. Cary*, and the creditors of *John Dow Cary*, first satisfy-

ing judgment creditors, as to them the said *George French* and *Jacob Young* shall seem just and equitable, so that the said *John D.*, *William* and *Robert T.*, shall each bear a proportion of the balance due on a judgment of *Cornelius* and *John Thompson* and *Ann M'Donald*, complainants, and *Mary*, *John D.*, *William* and *Robert T. Cary*, defendants, for which a proceeding is now in Chancery against them; and that the said *John D.* and *William* may be reimbursed so much as they may have satisfied of the said debt more than their equal proportion." Covenant by *French* and *Young*, that they and their heirs will, within a convenient time, dispose of the said three tracts of land for the best price, &c. Covenant by *John D. Cary*, &c. with *French* and *Young*, their heirs, &c. against the claim of all and every persons, &c. The plaintiff also gave in evidence a deed from *Jacob Young* to *George Scott*, dated the 28th of July, 1803, reciting that the said *Young* and *George French*, (deceased) "were appointed by the Court of Chancery trustees for the sale of real estate of *John*, *Robert* and *William Cary*, as will more fully appear by reference to the decree of the said Court, directing the said sale; and the said trustees did expose to sale the said real estate, according to the terms of the said decree, at which said sale the said *George Scott* did become the purchaser of lots No. 1, 2 and 5, (as will be more particularly described) part of the said real estate, at and for the price of £727 2 4½ in the whole, which said purchase money the said *George Scott* has paid; and the said sale, made by the said trustees, has been confirmed by the Chancellor; and the said *George French* is now dead." The said *Young*, in virtue of the said decree, &c. did convey to the said *George Scott*, his heirs and assigns for ever, "all those parts of the following lands, lying in *Frederick* county, to wit: Lot number one, being part of *The Resurvey on Panmure*, beginning," &c. containing 115½ acres; "also lot number two, being part of *The Resurvey on Panmure*, beginning," &c. containing 139½

acres; also lot number five, being part of the *Resurvey on Panmure* and *Zero,* beginning," &c. containing 43 acres, &c.   The plaintiff also offered in evidence, the record and proceedings in a cause between the said *George Scott's* lessee, plaintiff, and *Robinson Eastburn,* defendant, tried in *Frederick* County Court, and judgment therein rendered at February Term, 1808, in favor of the plaintiff, and a writ of *hab. fac. pos.* issued on the said judgment, and possession of the premises delivered to the plaintiff on the 27th of June, 1808.   By this record it appears that an action of Ejectment was instituted in *Frederick* County Court on the 17th of February, 1804, in the name of *George Scott's* lessee against *Robinson Eastburn,* for the recovery of a tract or parcel of land called *The Resurvey on Panmure,* containing 375 acres; also a tract of land called *Zero,* containing 53 acres; also a tract of land called *Palentine,* containing 319 acres; also a tract of land called *West Indies,* containing 8½ acres.   The defendant in that action appeared and entered into the common rule, and took defence on warrant, &c.   A warrant of resurvey issued, and plots were returned, &c.   And at the trial the jury by their verdict found the true location of the tract of land called *The Resurvey on Panmure,* as located by the plaintiff on the plots, beginning at I, and running, &c. And the jury found for the plaintiff all the land for which the defendant took defence, included within the above location of *The Resurvey on Panmure,* except so much thereof as was included in the *Ram's Horn,* as located by the defendant in red drawn lines, with three degrees for variation.   And as to the residue of the land claimed by the plaintiff, they found for the defendant.   Judgment was rendered on the verdict in favor of the plaintiff for possession and costs, &c.   On the 3d of May, 1808, a writ of *hab. fac. pos.* issued, and possession delivered to the plaintiff of the land so recovered.   The plaintiff also gave in evidence a deed from *George Scott* to *Robert Cheney,* dated the 3d of August, 1809, reciting that *Scott*

did by his agreement with *William Cheney*, deceased, dated the 31st of May, 1804, and by his bond of conveyance, &c. agree to convey to the said *W. Cheney* certain lands therein mentioned; that *W. Cheney* is since dead intestate, leaving brothers and sisters his heirs at law, of whom the above mentioned *Robert Cheney* is one, who filed his bill in *Frederick* County Court, praying a division or sale of the real estate of the said *William Cheney*, deceased, under the act to direct descents.    On which proceeding the said *Robert Cheney* elected to take the said estate at the valuation, and pay to the other heirs their respective proportions in money, which was confirmed by the Court, &c.    That the said *Robert Cheney* had received from the heirs of *William Cheney* a general power of attorney to act for them in all things relative to the said estate, as by reference to the said power of attorney, dated the 7th of August, 1806, will appear.    The said *George Scott* conveyed to the said *Robert Cheney*, and his heirs, all his the said *Scott's* right, &c. to all those three several tracts or parcels of land, &c. to wit: Lot No. 1, being part of a tract of land called *The Resurvey on Panmure*, beginning, &c. containing 115 acres. Lot No. 2, being part of a tract of a land *The Resurvey on Panmure*, and part of a tract called *West Indies*, beginning, &c. containing $125\frac{1}{4}$ acres.    Lot No. 5, being part of a tract of land called *The Resurvey on Panmure*, and part of a tract called *Zero*, beginning, &c. containing $44\frac{1}{4}$ acres. The said three parcels or lots of land said to contain $284\frac{1}{2}$ acres, more or less.    The plaintiff also gave in evidence a deed from *Robert Cheney*, attorney in fact for the heirs and legal representatives of *William Cheney*, deceased, to the lessors of the plaintiff, as heirs at law of *Henry Shilknecht*, deceased, as tenants in common, and not as joint tenants, dated the 26th of August, 1809, reciting that *William Cheney*, deceased, in his life-time, agreed to sell and convey to a certain *Stotlemyer*, two parcels or tracts of land particularly described in his bond of conveyance, dated the 5th of July, 1804.    That *Stotlemyer* relinquished his title

to the said tracts of land unto *Henry Shilknecht;* that the said *William Cheney* and *Henry Shilknecht* are both dead, no deed of conveyance of the said lands having been executed. The said *Robert Cheney* conveyed to the lessors of the plaintiff, in consideration of the premises, &c. all those two parts of tracts or parcels of land, viz: Lot No. 1, it being part of a tract of land called *The Resurvey on Panmure*, beginning, &c. containing 115 acres. Also, part of a lot No. 2, being part of the tract of land called *The Resurvey on Panmure*, beginning, &c. containing 6 acres. The deed was signed and sealed by *Robert Cheney*, as attorney in fact for the heirs and legal representatives of *William Cheney*, deceased, and by him acknowledged on the same day before one of the associate judges of the judicial district. Whereupon the defendant, by his counsel, prayed the Court to direct the jury, that the said deed from *Jacob Young* to *George Scott*, under the evidence offered, conveyed no title to the said *Scott.* Which direction the Court (SHRIVER and T. BUCHANAN, A. J.) gave to the jury. The plaintiff excepted.

2. The plaintiff, in addition to the evidence by him offered in the preceding bill of exceptions, gave in evidence the record and proceedings in a case in the Court of Chancery, upon the application of *John D. Cary, Robert T. Cary, William Cary, Jacob Young* and *George French.* This record states, that *John D. Cary* on the 9th of October, 1792, petitioned the Chancellor for the benefit of an insolvent law, passed at November Session, 1791, ch. 73, in which he was included among other petitioning debtors. A list of his creditors was exhibited with his petition to the Chancellor; also a schedule of his property, real, personal, and mixed. The usual and customary proceedings were had. And it appears, that on the 4th of March, 1793, *George Scott* was appointed trustee for the benefit of the creditors of *John D. Cary;* and afterwards, on the 4th of January, 1794, but for what cause does not appear, *George French* was appointed the trustee, who entered into a

bond as such. On the 14th of January, 1795, *George French*, the trustee, filed a petition by himself, *Jacob Young, John D., William* and *Robert T. Cary*, to the Chancellor, stating that the said *French* and *Young* were appointed by the *Cary's* above mentioned, as trustees, by a deed, to sell certain property; but that *French* and *Young* earnestly wishing, for the satisfaction of every person interested, that the Chancellor would direct in what manner and on what terms, the said property should be sold, prayed that the Chancellor would take the same into consideration, and appoint the said *French* and *Young* to sell the property in the deed mentioned, for the purpose therein expressed. The deed was exhibited as herein before referred to, dated the 8th of August, 1791. Also the will of *John Cary*, dated the 23d of November, 1773, whereby he devised, among other things, as follows: "Item. I give and bequeath to my son, *Robert Turner Cary*, all those pieces of land lying on *Catoctin* creek, and on the east side thereof, being part of *Panmure*, and part of *Palatine*, and also part of *Zero*, to him, his heirs and assigns, for ever. Item. I give and bequeath to my son, *David Cary*, all that part of a tract of land called *Panmure*, which lies on the west side of *Catoctin* creek, and also that part of a tract of land called *Zero*, lying on the west side of said creek, to him, his heirs and assigns, for ever." The Chancellor, (HANSON) on the 14th of January, 1795, decreed "that the said *George French* and *Jacob Young* do proceed to sell at public auction, either entire, or in such parcels as they shall judge most convenient, the lands conveyed to them in trust to be sold, by *John D., William* and *Robert T. Cary*, by indenture executed on the 8th of August, 1791, the purchaser or purchasers of each parcel giving bond, with security, to the said trustees, as such, for paying one-half of the purchase money, with interest, within one year, and the residue, with interest, within two years from the time of sale: Provided, that before the trustees proceed to sell, they shall give notice of the time

or times, place or places, manner, and terms of sale, by advertisement inserted three weeks successively in some convenient newspaper, and set up," &c. That they should return to the Court a full and particular account of their proceedings under the decree, with an affidavit of the truth thereof annexed. Also the bonds taken from the purchasers. "And upon the Chancellor's ratification of the sale, and receiving the whole purchase money, and not before, the said trustees, or either of them, by a good deed, shall give, &c. unto the purchaser or purchasers, and his; her or their heirs, the land to him, her or them sold," &c. That the trustees bring the money into Court, to be applied under the directions of the Chancellor, according to the intentions of the said deed of trust, &c. On the 24th of October, 1795, the trustees reported, that after giving three weeks public notice, &c. the said *Jacob Young* on the 3d of March, 1795, exposed to public sale lot No. 1, containing 211½ acres, lying on the west side of *Catoctin* creek, at 40 shillings and 7 *d.* per acre, to *Jacob Rhodes;* but *Rhodes* not being able to bond for said lot, &c. the said *Jacob Young* had since sold the said lot to *George Scott,* at the same price for which the said *Scott* had bonded. That the said *Jacob Young* sold at public sale to the said *George Scott,* lots No. 2 and 5, lying on the west side of the said creek, at the price of 44 shillings per acre; lot No. 2, containing 139½ acres, and lot No. 5, containing 43 acres; for both of which lots the said *Scott* had bonded. That the said *Jacob Young* sold at public sale to *Joseph Eller,* lot No. 3, lying on the west side of the said creek, containing 10 acres, at the price of 54 shillings per acre, &c. That the said *Jacob Young* sold at public sale to the said *Eller,* lots No. 4, 6, and 7, lying on the east side of the said creek, at 34 shillings per acre; lot No. 4, containing 97½ acres; lot No. 6, containing 48 acres; and lot No. 7, containing 167 acres. That three weeks public notice was not given of the sale of the lots on the east side of the said creek; but the said *Young* being of opinion that a good

price might then be obtained for the said lots, although not advertised, according to the directions of the said decree, exposed them to sale, and got the price aforesaid, which in the opinion of the said *George French* and *Jacob Young*, is a very good price. The trustees reported, that the sales of the said lands amounted to £1286 4 4½ current money. To this report was annexed an affidavit of its truth. The trustees also reported a survey, directed by them to be made of the lands directed to be sold, and of its division into seven lots, &c. On the 31st of October, 1795, the Chancellor ordered that the report of *George French* and *Jacob Young*, trustees, &c. be ratified and confirmed, unless cause to the contrary be shown, on or before the third Tuesday in December then next; provided a copy of the order be inserted in the *Fredericktown* newspapers at any time before the last of November. The trustees afterwards filed the following printed extract from a newspaper: "In Chancery, January 8th, 1796.—Ordered, That the report of *George French* and *Jacob Young*, trustees for the sale of the real estate of *John, Robert* and *William Cary*, be approved, and that the sales by them made, as stated in said report, of the property in lots, for £1286 4 4½, in the whole, be ratified and confirmed, unless cause to the contrary be shown, on or before the third Tuesday in March next; provided this order be inserted in the *Fredericktown* newspapers at any time before the 10th of February next.—Test, *Samuel Harvey Howard*, Reg. Cur. Can." On the 28th of April, 1803, *Ariana French*, executrix of *George French*, filed her petition to the Chancellor, stating that "by a decree, *Jacob Young* and *George French*, deceased, were appointed trustees to sell the real estate of *John D., Robert* and *William Cary;* that the said trustees sold the real estate according to the said decree, and reported to this Court, which report has been ratified and confirmed. That *George French* is since dead, and that she is his executrix. That at the time of the decree, and at the time of executing the deed of trust to the said *Young* and *French*, upon which the decree was

predicated, there were sundry judgments against the said *Cary's*, charging and incumbering the lands deeded in trust and decreed to be sold, which judgments are particularly stated in the amounts of payments and disbursements filed in this Court by the said *Young* as surviving trustee. That *George Scott*, a purchaser of part of the land sold, owes a considerable sum of the purchase money, which, with interest, he is ready to pay to the surviving trustee. That the judgments paid by the trustees were paid in succession according to their priority, and that the next oldest judgment is the one obtained by *Thomas Beall* for the use of *Archibald Orme*, against *John D. Cary* and *George French*, at May Term, 1789, a short copy of which is exhibited. That *George French* was only security for the said *Cary*, and was not principal in the bond upon which the judgment was obtained, the debt being due by *Cary* himself. That the said *French*, in his life-time, and the petitioner, had paid the said judgment, and that the said *Cary*, or his trustees as such, have paid no part thereof. *Prayer*, that as much of the purchase money due for the real estate sold under the said decree, as will satisfy the said judgment, with interest, &c. be paid by the said *Young*, the surviving trustee, to the petitioner, &c." Proof of the payment, &c. was exhibited. On the 21st of April, 1803, the Chancellor, on the above petition, proof, &c. being "of opinion that the petitioner having discharged the judgment obtained by *Thomas Beall*, for the use of *Archibald Orme*, against *John D. Cary* and *George French*, the said *French* being only a security for said *Cary*, is entitled to be in the place of the said *Orme*." The plaintiff also gave in evidence, that *David Cary*, mentioned in the will of *John Cary*, the patentee, died in his infancy, intestate, and without issue, long before the deed of the said *John D., Robert T.* and *William Cary*, to *Jacob Young* and *George French*. Whereupon the plaintiff prayed the opinion and direction of the Court to the jury, that from the facts given in evidence in this cause, they may and ought to presume, that the return

of sales, as reported by the trustees in the said proceedings in Chancery, was finally ratified and confirmed by the Chancellor. But the Court (Shriver and T. Buchanan, A. J.) were divided in their opinion as to the direction prayed for as aforesaid. Wherefore they did not give the opinion and direction prayed for by the plaintiff. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this Court.

The cause was argued before Buchanan, Ch. J. Earle, Martin, Stephen, Archer, and Dorsey, J.

*Ross*, for the appellant, on the 1st *exception*, referred to 2 *Blk. Com.* 308, 309. *Bolton vs. Bishop of Carlisle*, 2 *H. Blk.* 263, 264. *Doe vs. Bingham*, 6 *Serg. and Low.* 562. *Roe, ex. dem. Berkely, vs. Archbishop of York*, 6 *East.* 101. *Shepherd vs. McEver*, 4 *Johns. Ch. Rep.* 136. *Jackson vs. Neely*, 10 *Johns. Rep.* 386. *Huntington vs. Havens*, 5 *Johns. Ch. Rep.* 27. *Run. Eject.* 400, 401, 435. *Jackson vs. Woolsey*, 11 *Johns. Rep.* 509. *Morris and others, vs. Rosser*, 3 *East.* 15. *Jackson vs. Schauber*, 7 *Cowen's Rep.* 201. On the 2d *exception* he referred to 3 *Stark. Ev.* 1235, 1251. *Eldridge vs. Knott, Cowp.* 215. *Hillary vs. Waller*, 12 *Ves.* 251, 256. 2 *Saunders' Law. Ev.* 728. *Fenwick vs. Reed*, 7 *Serg. and Low.* 80, 81. *Donn vs. Lewis*, 11 *Ves.* 601. *Bank U. S. vs. Dandridge*, 12 *Wheat.* 69, 70. *Ricard vs. Williams*, 7 *Ib.* 109, 110.

*Nelson*, and *F. A. Schley*, for the appellees, on the 1st *exception*, cited *Mann and Toles vs. Pearson*, 2 *Johns. Rep.* 37. *Lodge's Lessee vs. Lee*, 6 *Cranch*, 237. *Dorsey vs. Hammond*, 1 *Harr. and Johns.* 193. *Buchanan's Les. vs. Steuart*, 3 *Ib.* 329. 4 *Yeates' Rep.* 577. *Barr vs. Gratz*, 4 *Wheat.* 213, 221. *Penrose vs. Griffith*, 4 *Binney*, 231. 1 *Stark. Ev.* 369, (*note.*) 4 *Cruise*, 37. 1 *Saund. L. Ev.* 7. *Barr vs. Gratz*, 4 *Wheat.* 220. *Barney vs. Patterson*, 6 *Harr. and Johns.* 203. *Ham. Dig.* 448. On

the 2d *exception*, they referred to *Lake vs. De Lambert*, 4 *Ves.* 592. 1 *Stark. Ev.* 152. 3 *Inst.* 173. *Orndorff vs. Mumma*, 3 *Harr. and Johns.* 70, 71. 4 *Com. Dig. tit. Ev. (A.* 4) 89. 3 *Stark. Ev.* 1251. *Knight vs. Dauler, Hard. Rep.* 324. *Cockey vs. Smith*, 3 *Harr. and Johns.* 27. *Sugd.* 32. *Anonymous*, 2 *Ves. Jr.* 335. *Annesley vs. Ashurst*, 3 *P. Wms.* 282, 283. *Ex parte Minor*, 11 *Ves.* 559. *McHen. Eject.* 151, 152. *Goodtitle vs. Duke of Chandos*, 2 *Burr.* 1071, 1076. *Causwell vs. Vaughan*, 2 *Saund. Rep.* 42, *a* (*note.*) *Yard vs. Ford, Ib.* 175. 3 *Stark. Ev.* 1284, 1285. *Eldridge vs. Knott*, 1 *Cowp.* 215. *Hillary vs. Waller*, 12 *Ves.* 251, 264. 2 *Saund. Ev.* 728. *Ricard vs. Williams*, 7 *Wheat.* 109, 110. *Hopkins vs. Hopkins*, 10 *Johns. Rep.* 380, 381. *Carroll vs. Norwood*, 1 *Harr. and Johns.* 172. 3 *Ib.* 27. *Beall vs. Lynn*, 6 *Harr. and Johns.* 351.

*Ross*, in reply, cited, on the 1st *exception, Hawkins vs. Hanson*, 1 *Harr. and McHen.* 528. *Dorsey vs. Hammond*, 1 *Harr. and Johns.* 193. *Buchanan's Les. vs. Steuart*, 3 *Ib.* 329, 339. *Lodge's Les. vs. Lee*, 6 *Cranch*, 237. *Roe, ex. dem. Berkely vs. Archbishop of York*, 6 *East.* 105, 106. *Barr vs. Gratz*, 4 *Wheat.* 221. 4 *Yeates' Rep.* 577. 1 *Saund. Ev.* 7, 51. *Hopkins vs. Lee*, 6 *Wheat.* 113. *Chirac vs. Reinecker*, 11 *Wheat.* 296. *Outram vs. Morewood*, 3 *East.* 346. On the 2d to *Anderson vs. Foulke*, 2 *Harr. and Gill*, 353, 356, 357, 359. *Weems vs. Brewer, Ib.* 401.

MARTIN, J. delivered the opinion of the Court.

In the argument of this cause, several points have been brought into view by the counsel for the appellant, which cannot be noticed in the decision. The ejectment was tried in 1826, of course, is embraced by the act of 1825, ch. 117, and this Court can only review such questions of law, as were acted on by the Court below. In the first bill of exceptions, the only question decided by the Court below, was, that the deed from *Young* to *Scott*, made in 1803, *under the evidence offered*, conveyed no title to the said *Scott*; and in

the second bill of exceptions, the Court decided upon the question, whether the jury might presume from the evidence, that the sale reported by the trustee, under the decree of Chancery, was finally ratified and confirmed.

By the recitals in the deed of 1803, it appears, that *French* and *Young* were appointed by the Court of Chancery, trustees, to sell certain real estate of *John, Robert,* and *William Cary*—that the said trustees did expose to sale the said real estate, and that *George Scott* became the purchaser of part, and has paid the purchase money. It then states that *French* was dead, and that *Young*, in virtue of the *decree of the Court of Chancery*, did convey to the said *Scott*, his heirs and assigns, for ever, lots No. 1, 2, and 5, being part of a tract of land called "the resurvey on *Panmure,* and *Zero,*" &c.

This deed clearly shews on the face of it, the character in which *French* and *Young* acted; and to give it legal effect and operation *as a deed under the decree of the Court of Chancery*, a copy of the record ought to have been produced, to shew the trust reposed in them, and their legal performance of it. Although this deed could not have legal operation as a deed under the decree of Chancery, without producing a record of the proceedings, it shall be taken most strongly against the grantor, and if he had a legal interest in the land, that could be transferred by an ordinary deed of bargain and sale, the Court ought to give it effect as such.

On the 8th of August, 1791, the legal estate in both *Panmure,* and the *Resurvey on Panmure,* was vested in *John, Robert,* and *William Cary,* and by a deed of that day, they conveyed to *French* and *Young,* as joint tenants, in fee, the tracts of land called *Zero,* and *Panmure,* containing 375 acres, and part of *Palentine,* in trust, &c. By this deed, the legal estate in *Panmure* was vested in *French* and *Young,* as trustees, in joint tendancy. Although they were trustees, yet the legal estate vested in them jointly, and either could *at law,* convey his undivided moiety in the

land. The land having been sold by *French* and *Young*, if *French* died, *Young* could convey the whole interest in the land to the purchaser. If *French* was alive, still as *Young* was seized as joint tenant in fee, of an undivided moiety with *French*, by his separate deed of 1803, all *Young's* legal estate passed to *Scott*, the grantee.

The land in dispute in this ejectment, is lot No. 1, part of the *Resurvey on Panmure;* and to make the deed of 1803 available to the plaintiff, it must convey an interest not only in *Panmure*, but in lot No. 1, part of the *Resurvey on Panmure*. Whether it has this effect, must depend entirely on the legal operation of the deed of 1791.

This deed conveys *Panmure*, containing 375 acres, without giving any description of the land intended *to* be conveyed, by courses and distances expressed in the deed. If there is nothing to aid the legal operation of this deed, it can only convey *Panmure;* for certainly, a deed for one tract of land, cannot *per se*, convey another tract. No testimony has been introduced to shew, that *Panmure*, and *The Resurvey on Panmure*, are the same tract, but called by different names, and as before observed, no description of the land intended to be conveyed, by courses and distances, is given in the deed, to extend the land beyond that conveyed *by name*. The number of acres in the deed, being more than *Panmure* contains, cannot alone effect that object, and the reference to the patents, *in legal intendment*, can only relate to the patents of *Zero*, and *Panmure*.

It has been supposed, the location of the deed of 1791, on the plots, not being counter-located by the defendants, is an admission by them, that *Panmure*, and *The Resurvey on Panmure*, are but one tract of land. A location of a tract of land, by one party in ejectment not counter-located by the other, admits the location to be correct—that is, that the land is correctly described on the plots; but it does not admit *the title* to the land thus located—*this must still be proved*. To recover in ejectment, when defence is taken on warrant, the plaintiff must shew the true position of the land

by location, and *also*, that he has a legal title to the land thus located. The admission in this case to the greatest extent, is only, that the deed of 1791, is correctly laid down by the plaintiff, on the plots; but still requires him to shew that this deed, by its legal operation, conveyed the land thus located. The deed, from any thing that appears in this record, could only convey to the grantees, *Panmure*, according to the lines, metes, and bounds, of that land, and as *Young's* title was derived from that source alone, his deed of 1803, could transfer no title to the land in controversy in this ejectment, that being part of *The Resurvey on Panmure*, and not included within the lines of the original tract. We concur in opinion with the Court below, that the deed of 1803, conveyed no title, *that could avail the plaintiff in this ejectment.*

The Court having decided against the plaintiff, as to the operation of the deed of 1803, under the evidence *then* offered, he, in addition to that contained in the first bill of exceptions, produced a copy of the record of the proceedings in Chancery—a petition to the Chancellor, by *Ariana French*, and the order of the Chancellor thereon. He then prayed the opinion and direction of the Court to the jury, that they may, and ought to presume, from the facts given in evidence in the cause, that the return of sales, as reported by the trustees in the proceedings in Chancery, was finally ratified and confirmed. The Court were divided in opinion, and did not grant the direction, as prayed for by the plaintiff.

It appears from the record of the proceedings in Chancery, that a petition was filed by *John, Robert,* and *William Carey,* and *French,* and *Young,* praying the Chancellor to appoint *French* and *Young* trustees, to sell certain real estate, that had been conveyed to them by the said *Carey's* in trust. That a decree passed accordingly. That *French* and *Young,* as trustees under this decree, sold the said real estate, and *George Scott* became the purchaser of part of the same. A report of this sale was returned to the Chan-

cellor, who, on the 31st of October, 1795, passed an order of confirmation, *nisi*, &c., but it does not appear from the record, that the report of the sale was *finally* ratified and confirmed.

The law is well established, that facts to aid a title, may, in some cases be presumed, and the question now presented to us is, whether the evidence in this cause was sufficient to justify the jury in presuming the report of the trustees, was *finally* ratified and confirmed.

The decree was passed in the year 1795; the sale under that decree; the report of the trustee was returned; and the order of confirmation, *nisi*, &c. all in that year. The deed from *Young* to *Scott*, in 1803, and this Ejectment, was tried in 1826. At least thirty years elapsed between the order *nisi* and the trial of the cause, and twenty-two years between the deed to *Scott* and the trial.

The decree in express terms directs, that *no deed shall be given* until the report of sales shall be *finally* ratified and confirmed, and the purchase money paid. It is not to be intended the trustee disregarded this injunction. He had no interest in violating it, and the law will always lean to the presumption that a trustee has faithfully executed his trust. Here is a deed under the decree of Chancery, which ought not to have been made, unless the report had been *finally* confirmed; and upon the hypothesis that the report was *finally confirmed*, is the only fair way to account for it. This presumption is strongly sustained by the other evidence in the cause. The petition of *Ariana French*, although not of itself sufficient to create the presumption, may be called in aid of other evidence, to effect that purpose. This petition was filed in 1803, the same year in which the deed was executed, and but a few years after the order of confirmation, *nisi*. It was almost a cotemporaneous act with the deed. This petition states the decree of the Chancellor; the report of sales made under that decree; *that the report had been finally ratified and confirmed*, and that *Scott*, the purchaser, was ready to pay the purchase

money. It further states, that *Archibald Orme* was entitled to part of the purchase money, *the proceeds of the sale under the decree of Chancery*, and prays the petitioner (from the facts stated in her petition) may be substituted in the place of *Orme*, and *that the trustee may be directed to pay her claim.* The Chancellor, in his order, says he has considered the petition with the *vouchers and proofs* therewith filed, and directs the petitioner to be substituted in the place of *Orme.* It may be true that this substitution might have been directed, although no proceedings had taken place to sell the land; but when the petitioner states the proceedings as the foundation of her claim, and the Chancellor declares he had considered the petition *with the vouchers and proof therewith filed,* is it not fair to conclude he was satisfied of the truth of the facts as stated in the petition? It was then a recent transaction, and in his own Court.

In 1804, an action of Ejectment was instituted by *Scott,* the grantee in the deed of 1803, against *Robinson Eastburn,* (who was originally the defendant in this Ejectment) to recover the same land now claimed. This case was tried in 1808, when there was a verdict for the plaintiff, judgment, and a writ of possession. In both Ejectments, the defence was taken on warrants, and the defendant took defence, not for all the land claimed, but only for so much thereof *as was included within the lines of other tracts.* The possession of a great part of the land intended to be conveyed by the deed of 1803, has, from that time, been in the grantee named in the deed, and those who claim under him, and *only part* has been disputed, as being within the lines of other tracts.

When we view the whole evidence, the presumption appears irresistible, that all was done in Chancery that was necessary to give legal effect to this deed under the decree. This was a judicial sale, the purchase money *bona fide* paid, and every fair legal presumption ought to be allowed to sustain it.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.