# JOHN T. FUHRMAN *vs.* GEORGE A. FUHRMAN AND ELLA C. WANTZ.

*Administrators; assignments of promissory notes; presumption of authority; order of Orphans' Court. Acquiescence. Sureties; contribution among; liability of principal. Accommodation notes. Code; construction of; Art. 8, sec. 5.*

After the death of a payee, the note and mortgage securing the same were assigned by the administrator, in his representative capacity, to the widow, and by her subsequently assigned. Upon suit being brought by her assignee, it was objected that there was no evidence of an order of the Orphans' Court ordering or authorizing the sale; that the assignment was therefore nugatory under the Code, Art. 93, sec. 281. *Held,* that in the absence of proof it must be assumed that the administrator had obtained the necessary orders.　　　　　　　　　　　　　　　　pp. 439-440

A fiduciary is entitled to the presumption of fidelity in the performance of his trust.　　　　　　　　　　　　　　p. 440

Long acquiescence in any adverse claim or right is good ground on which a jury may presume that the claim had a legal commencement.　　　　　　　　　　　　pp. 440-441

Under the common law, if two or more sureties pay a debt they must sue separately for reimbursement from their principal, unless they have made the payment out of a joint fund.　　　　　　　　　　　　　　　　　　　　p. 441

In equity the surety was subrogated to all the remedies and securities of the creditors.　　　　　　　　　　　p. 442

At law the only remedy of the surety was to sue the principal upon his implied promise of reimbursement.　　　p. 442

Md.]                         Syllabus.

Art. 8, sec. 5 of the Code of Public General Laws, providing that where a "surety in any * * * obligation for the payment of money, etc., pays or tenders the money due, he shall be entitled to an assignment, etc., and may maintain an action thereon," enlarges, the right of the surety ; and under it he is entitled to have assigned to him the instrument representing the debt he has paid and to maintain an action on it against the principal debtor.                          . pp. 441-442

This special remedy is available only against the principal debtor, and can not be utilized against co-sureties.        p. 443

Although the statute in conferring the right of action uses the word "surety" in the singular, yet under the rules of the Code of Public General Laws for the interpretation of its own provisions, Art. 1, sec. 7, the statute applies to all the sureties in any obligation for the payment of money.    p. 443

None of several sureties can exercise rights under Article 8, section 5 of the Code of Public General Laws, without the payment of the entire debt, and if all combine to discharge the claim of the creditor there is no just reason to deny them the benefit of the statutory remedy.                      p. 444

An accommodation party to a negotiable instrument is in effect a surety of the party accommodated.            p. 444

The Code of Public General Laws, Art. 8, sec. 5, giving to . sureties the right of assignment and the right of action in their own names, includes the suretyship of an accommoda- tion maker of a promissory note.                      p. 445

Where the only objection to a prayer is that it did not submit to the finding of the jury certain facts as to which there was no controversy, the objection is properly overruled.      p. 445

*Decided April 6th, 1911.*

Appeal from the Circuit Court of Carroll County (THOMAS, C. J., and FORSYTHE, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, PATTISON and URNER, JJ.

*James A. C. Bond* and *Francis Neal Parke,* for the appellant.

*Ivan L. Hoff* and *Guy W. Steele,* for the appellees.

URNER, J., delivered the opinion of the Court.

The appellant and appellees and their parents were co-makers of a promissory note for one thousand dollars secured by a mortgage of property in which they were all interested. After the death of the payee intestate the note and mortgage were transferred to his widow by the administrator of his estate. Upon the failure of the appellant to continue the payment of the interest, to which he had attended since the inception of the indebtedness, the appellees were compelled to pay the amount of the principal and interest in order to avoid a foreclosure of the mortgage. The note and the mortgage were thereupon assigned to the appellees, and they subsequently brought this suit for reimbursement from the appellant upon the ground that he was the real principal in the transaction, and that they were merely his sureties. The declaration contains the common counts in assumpsit and special counts on the note, and the defendant pleaded the general issue and limitations. To the latter plea the plaintiffs replied a new promise. The only issues of fact in the case related to the questions of suretyship and the suspension of the statute by acknowledgments of the defendant. Upon these issues the jury found for the plaintiffs. The Court below rejected certain prayers offered by the defendant proposing directions for a verdict in his favor, and the propriety of this ruling presents the principal question for our consideration.

There are two grounds upon which it is claimed that the plaintiff's proof should be held legally insufficient to support recovery. The first is that there was no evidence offered to

show that the assignment of the note by the administrator of the payee's estate to the plaintiffs' assignor was authorized by an antecedent order of the Orphans' Court under whose jurisdiction the estate was being administered. The assignment in question was in the form of an ordinary endorsement of the note to the order of the assignee. It was signed by the administrator in his representative capacity. There was nothing in the endorsement or on the note to show the occasion for the transfer. It was in evidence that the assignee was the widow of the payee, and this fact would suggest the idea that she received the note on account of her interest in the estate. It was contended, however, that the words "for value received", used in the assignment to the widow of the mortgage securing the note, indicated that the transfer of both instruments was made in pursuance of a sale. Upon the assumption that this was the real nature of the transaction, and in the absence of evidence to show that the sale was duly authorized, it is urged that the assignment must be held nugatory under section 281 of Article 93 of the Code, which provides that: "No executor or administrator shall sell any property of his decedent without an order of the Orphans' Court granting his letters, being first had and obtained, authorizing such sale; and any sale made without an order of Court previously had as aforesaid shall be void, an no title shall pass thereby to the purchaser."

Without finding it necessary to determine whether the mere use of the words "for value received" in the assignment of the mortgage would be sufficient to justify the inference that the accompanying note had been *sold* to the assignee, especially in view of the widow's relationship to the estate, but accepting this theory for the purposes of our decision, we are of the opinion that the evidence in the record was legally sufficient to sustain the validity of the title transmitted by the administrator of the payee. To hold otherwise would be to assume from the mere absence of proof to the contrary that the administrator may have committed a breach of his duty by violating the plain prohibition of the statute

we have just transcribed. This would be in direct conflict with the principle that a fiduciary is entitled to the presumption of fidelity in the performance of his trust. In . *Shilknecht* v. *Eastburn,* 2 G. & J. 130, the title involved was dependent upon a deed executed by a trustee appointed by a decree which expressly provided that no deed should be given until the report of sale was finally ratified. There was no evidence as to the ratification of the sale. "The law is well established," said the Court, "that facts to aid a title may in some cases be presumed. * * * It is not to be intended the trustee disregarded this injunction. He had no interest in violating it, and the law will always lean to the presumption that the trustee has faithfully executed his trust." It was said in *Brewer* v. *Bowersox,* 92 Md. 574: "Where an act may be innocent or culpable, as antecedent circumstances make it one or the other, and those antecedent circumstances are not disclosed; the plainest dictates of justice require that the act shall be treated as an innocent act. And so when the alternative is as to whether the act is rightful or wrongful, the act being one that may be either according to its environment, and there is nothing to show that it is wrongful, the natural and the general presumption, founded on observation and experience, is that it was rightful." The present case is clearly entitled to the benefit of this principle.

There is another consideration which prevents the adoption of the appellant's theory. It is in evidence that from the time the note was given in 1881 the appellant paid the interest annually to the original payee until his death, in 1892, and thereafter continued the interest payments to the widow for fifteen years after she had received the note by assignment from the administrator. During this protracted period the widow remained the holder of the note and her ownership was uniformly recognized by the appellant. There was certainly in this circumstance a sufficient basis for the inference that the assignment by the administrator was not open to question. It is a general rule that "long acquiescence in any adverse claim of right is good ground on which a jury

may presume that the claim had a legal commencement." 1
*Greenleaf on Evidence,* section 47.   In the absence from the
record before us of any evidence to show that there was any
irregularity in the assignment we think the long-continued
recognition of its validity by the appellant was a fact which
it might be legitimately inferred that an order of Court, if
really required by the nature of the transaction, had been
duly obtained.

The cases of *Dittman* v. *Robinson,* 57 Md. 486, and *Green*
v. *Hart,* 57 Md. 234, relied upon by the appellant to sup-
port the contention we have discussed, were concerned with
very different questions from the present.   In each of these
cases the action was instituted by an administrator *d. b. n.
c. t. a.,* and the declaration was held defective in not alleging
an order of the Orphans' Court authorizing the suit.   The
necessity for an averment by a personal representative as to
his authority to sue rests upon a principle which is not at all
inconsistent with that which permits a presumption as to
the rightfulness of his executed acts under such conditions as
exist in this case.

The second general objection raised by the defendant to
the legal sufficiency of the evidence to support a verdict for
the plaintiffs is that the record shows without dispute that
they paid the note with their separate moneys and not out of
any fund in which they were jointly interested, and that con-
sequently they are not entitled to a joint recovery.   This
theory is dependent upon the common law principle that if
two or more sureties pay a debt, they must sue separately for
reimbursement from their principal unless they have made
the payment out of a joint fund.   32 *Cyc.* 265; 7 *Amer. &
Eng. Encyc of Law,* 2nd ed., 352; 1 *Brandt on Suretyship,*
sec. 209.   The reason of this rule is that the implied promise
of the principal to indemnify the sureties is regarded as
having been made to them separately and not jointly.   It is
insisted that the application of this principle to the case at
bar is not affected by the statutory provision (*Code,* Article
8, section 5 ) that: "The surety in any bond or other obliga-

tion for the payment of money or promissory note, or the endorser of any protested bill of exchange, who shall pay or tender the money due thereon, whether the whole be due or part has been previously paid, shall be entitled to an assignment thereof; and may, by virtue of such assignment maintain an action in his own name against the principal debtor."

The contention is that the section quoted, so far as it applies to bills of exchange and promissory notes, is merely declaratory of the common law; and a suggestion to that effect is cited from 1 *Poe on Pleading and Practice,* 4th ed., sec. 115. At common law the only legal remedy of the surety was to sue the principal upon his implied promise of reimbursement. *Crisfield* v. *Handy,* 55 Md. 196; *Note to Nelson* v. *Webster* (Neb.), 68 L. R. A. 517; 52 *Cyc.* 261. In equity the surety was subrogated to all the remedies and securities of the creditor. *Crisfield* v. *Handy, supra; Orem* v. *Wrightson,* 51 Md. 34; *Wallace* v. *Jones,* 110 Md. 143; *Note to* 68 *L. R. A., supra.* In Mr. Poe's discussion of the statute to which we have referred, in his work on *Pleading, supra,* the legal right of action just stated was mentioned as applying to *bonds* given for the payment of money, and it is then said: "By this section, however, an additional remedy is given to the *surety* upon *a bond* against the principal debtor, for upon paying it, he is declared to be entitled to an assignment of it, and may upon it maintain an action against the principal debtor. With reference to promissory notes and bills of exchange, the section is, perhaps, only declaratory of the common law." The last sentence in this quotation is based upon an observation of JUSTICE LIVINGSTON, in *Lenox* v. *Prout,* 3 Wheaton, 526, that: "By an Act of Maryland it seems expressly provided—which is, perhaps, only declaratory of the common law, that an endorser may tender to a plaintiff the amount of judgment which he has recovered against the maker of a note, and obtain an assignment of it." The Act here referred to is section 6 of Article 8 of the Code which provides that when judgment is recovered against the principal debtor and surety, and the latter pays the amount

due, he shall be entitled to an assignment of the judgment and execution in his own name against the principal. Jus- TICE LIVINGSTON was disposing of a suit in equity, and his allusion to the common law in the statement quoted doubtless had reference to the equitable right of subrogation which existed independently of statute in favor of a surety who paid the debt of his principal. So far as *legal* remedies against the principal were concerned it is well settled as already indicated, that the surety was confined at common law to his action in implied assumpsit. The creditor's claim against the principal being extinguished by the surety's pay- ment, the evidence of that indebtedness could not be made the basis of a suit at law. It is evident that our statute enlarges the right of the surety in this respect. He is now entitled to have assigned to him the instrument representing the debt he has paid and to maintain an action on it against the principal debtor by virtue of the assignment. The common law right of a surety to sue his principal in implied assumpsit has therefore been supplemented by the statutory right to sue, after assignment on the original evidence of indebtedness. This special remedy, however, is available only against the principal debtor and can not be utilized as against co-sureties. *Carroll* v. *Bowie,* 7 Gill, 42; *Martindale* v. *Brock,* 41 Md. 576.

The statute in conferring the right of action we are con- sidering uses the term "surety" in the singular. But the Code enacts, in its rules for the interpretation of its own provisions (Article 1, section 7), that: "The singular always includes the plural and *vice versa* except when such construction would be unreasonable." There is no reasonable ground upon which to impute to the Legislature the intention to discriminate in the Act between a single surety who pays the debt and two or more sureties who join in accomplishing the same object. The obvious purpose of the statute was to provide a special method for the enforcement of the right of a surety to be reimbursed. This right exists in favor of all the sureties in any obligation for the payment of money. None of them can

exercise it without the payment of the entire debt, and if all combine to discharge the claim of the creditor there is no just reason to deny to them the benefit of the statutory remedy. In this case the two sureties have actually received an assignment of the note they have paid, and as they are jointly interested in the evidence of indebtedness which they have thus acquired under the law, they are clearly entitled to maintain the present joint action upon it to enforce the liability of the principal debtor.

The questions we have discussed were raised upon the defendant's first and second prayers. As they were opposed to the views we have stated as controlling the case we approve of their rejection.

The defendant's fourth prayer sought to have the jury instructed that under the pleadings there was no evidence legally sufficient to entitle the plaintiffs to recover under a Court in the declaration which preceded upon the theory that the plaintiffs signed the note in suit as *accommodation co-makers* at the defendant's request.

It is urged that such a maker of a joint and several promissory note is not a surety within the meaning of the statute. We are unable to sustain this contention. The principle is well established that an accommodation party to a negotiable instrument is in effect a surety of the party accommodated and has the same right of recourse that any other surety has against his principal. 7 *Cyc.* 725; 1 *Words and Phrases,* 74; *Barron* v. *Cady,* 40 Mich. 261; *Amer. Nat. Bank* v. *Junk Bros. Lumber Mfg. Co.,* 94 Tenn, 624 (28 L. R. A. 492); *Guinness, Barrett & Co.* v. *Weigley,* 114 Pa. St. 195. The act under consideration does not define the character of the suretyship in the instruments mentioned with reference to which the additional remedy is provided. It confers the right generally upon those who are in fact sureties in any bond or obligation for the payment of money or promissory note without reference to the technical origin or designation of their relation to the principal debtor. In view of the unqualified use of the term in the statute we

can have no doubt that it was intended to include the surety-
ship of an accommodation maker of a promissory note. The
fourth prayer of the defendant was in conflict with this prin-
ciple and was properly refused.

The plaintiffs' first prayer, which was granted as modified
by the Court, instructed the jury that if they found from
the evidence that the note in suit was signed by the plain-
tiffs. at the request of the defendant for the purpose of
enabling the defendant to borrow money thereon and that
the plaintiffs received no part of the money secured by the
note, and should further find that the plaintiffs subsequently
paid to the holder the amount of the note and interest, then
the plaintiffs were entitled to recover the amount from the
defendant, provided the jury should further find that the
defendant within three years before the suit made a promise
to pay to the holder. It is objected that this prayer did not
submit to the jury to find whether the note was delivered
to the payee and whether the defendant actually received the
loan. There were also special exceptions raising the same
questions we have considered in the prayers to withdraw
the case from the jury. There was no controverted issue of
fact before the jury as to the specific matters in respect to
which the prayer is claimed to have been deficient as the
delivery of the note and the receipt by the appellant of the
loan it represented were shown without contradiction. The
prayer, therefore, could not be held objectionable upon the
grounds suggested. It correctly submitted the case to the
jury, and the objections, both general and special, were
properly overruled.

The appellant's contention on the merits was that he and
the appellees and their mother were sureties on the note for
their father, and that the latter borrowed the money it
secured for the purpose of paying an indebtedness he had
incurred to the appellant for services rendered. It was
claimed, therefore, that the appellees' recovery from the
appellant should be upon the basis of contribution among
co-sureties and should not be extended to complete indem-

nity. This theory, as well as that of the plaintiffs, was fairly submitted to the jury under proper instructions granted at the instance of the respective parties. There was no error in any of the rulings submitted for our review and the judgment must be affirmed.

*Judgment affirmed, with costs.*