# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed September 30, 1927.

ALFRED JENKINS SHRIVER
VS.
CARLIN-FULTON COMPANY, GARNISHEE OF DAVID M. FULTON.

*C. C. Wallace* attorney for plaintiff.

*Walter H. Buck,* and *Harry E. Parkhurst,* attorneys for defendant.

O'DUNNE, J.—

This case presents two law points having little or no relation one to the other:

First. Whether on a judgment obtained on a joint and several obligation against one as principal and several as sureties, the entry of "agreed and settled as to one named surety *only*," operates, *as matter of law*, so as to release *all* judgment debtors.

Second. Whether the salary of $3,600 a year is exempt from attachment or garnishment, where the earner of it is first V. P., director, salesman and "salesmanager" of 10 salesmen and 6 clerks, as well as stockholder in a wholesale hardware company, where gross sales are $450,000 a year, but where the salary is not paid as *officer* or *director*, but only as *salesman and salesmanager.*

Held, no, as to the first, yes, as to the second.

The first point arises on the following facts:

In October, 1917, suit was filed by the plaintiff against several defendants on a bond for building construction, wherein Roland Realty Company was principal, G. Howard White, David M. Fulton, Charles Fulton and J. E. Franklin, sureties. The obligation was joint and several in its nature, and judgment was obtained in June, 1920, in favor of the plaintiff against all the defendants for $5,272.

On July 26, 1920, there was filed an order of *"agreed and settled as to G. Howard White only,* on payment of costs by said G. Howard White," which costs were paid, and later, in June, 1925, an attachment was issued on the judgment and laid in the hands of Carlin & Fulton Company as garnishee of one of the defendants, David M. Fulton.

On these facts the contention of the defendants' counsel is that the order of satisfaction of the judgment as to one of the sureties, G. Howard White, *operates in law* as a release of all of the defendants, including the principal and all other sureties.

*The second point* is as to the construction of the "wage and salary" exemption and whether it is applicable to the garnishee of David M. Fulton.

The facts upon which the second proposition of law arises are these:

The Carlin & Fulton Company is a Maryland corporation engaged in the wholesale hardware business, with an authorized capital stock of $125,000, of which only $89,500 has been issued and is outstanding.

Of this amount David M. Fulton is the owner, in his own name and of record, of 15 shares of the 895 shares issued, or $1,500 of the $89,500 par value. In 1922, he was second vice-president, director and stockholder, as well as salesman and general salesmanager of said company. In 1923, he was made first vice-president and is still such first vice-president and continues to be also director, stockholder,

salesman and general sales manager. None of the officers of the company, except the president and treasurer, is paid any salary as officers. The directors as such receive no compensation. Fulton received a salary of $250 per month as general sales manager and salesman and also travels as salesman for about one-third of the year, and is allowed $50 per month throughout the entire year to cover traveling expenses, no account of which is required, and if his expenses exceed that amount he is required to defray such excess himself, but if they be less than that amount he receives the same allowance. His duties as general sales manager are to supervise the work of the salesmen, of which there are ten, including himself, the other nine being traveling salesmen working entirely on a commission basis. He also supervises the work of six clerks in the home office of the Carlin & Fulton Company, but has nothing to do with the extension of credit and nothing to do with the financial policy of the company as either salesman or sales manager' (but as first vice-president and director his duties are such as are incident to those offices, which are non-paid- offices). As stockholder for the year 1925, he received 5% dividends on his stock with other stockholders, amounting to $75, and 4% dividends in 1926, amounting to $60. The approximate gross volume of business of said company is $450,000 a year. The fact that said Fulton is director and vice-president of the company has nothing to do with his appointment as sales manager of the company.

On the close of the taking of testimony, the defendant's counsel offered prayers to withdraw the case from the jury on both of the above grounds, based upon the above facts.

The Court is indebted to counsel on both sides for a very able presentation of the authorities upon which they rely, both in support of and in opposition to the granting of prayers based upon the foregoing facts.

' With such limited opportunity outside of the oral argument, as I have had for independent examination of the questions and of the authorities cited, I shall endeavor to present such conclusion as I have been able to reach, in the order in which the propositions have been discussed.

*Legal Proposition No.* 1. Does entry on the docket of "Agreed and settled as to G. Howard White only," (one of the sureties) operate in law as a release of the other sureties not intended to be thereby released, and not entitled, in common justice, to be thereby released?

Professor Williston of Harvard, in his learned article on the release of joint debtors, in 25 Harvard Law Review, p. 204, says:

"It has been settled for centuries that a release of one joint debtor discharges all," and quotes Coke on Littleton, Vol. 2, p. 232a, as early authority for the broad statement.

Whatever is, or has been, the law of centuries, it is not of universal application, because of limitations and refinements that have found their way into judicial expression of Courts of last resort, in their effort to supplant the technicality of the ancients, by a modern adaptation of the law to changed commercial conditions.

It might also be said that for centuries the doctrine of "contribution," while applicable among co-sureties in actions "ex contractu," is unknown as applied to "joint tort feasors." That also is not universally true, and is not so in Maryland since the Act of 1927, Ch. 540, p. 1114, where provision is expressly made for contribution; i. e., where one defendant in *tort* has paid the judgment against his co-defendant *in tort*, and who has not contributed to the discharge of the judgment. A definite procedure is laid down in the Act as to the assignment of the judgment, or entry to his use. Important in that it also recognizes the right of joint defendants in judgment *in tort*, to execute with legal impunity, any other such *"acquittance papers"* they may mutually agree upon (without danger of thereby releasing, *by operation of law*, other defendants).

Changed commercial conditions, particularly the advent of the automobile and the resulting tort actions which almost clog the machinery of justice, as they multiply on the Court dockets, have doubtless brought about this changed condition, and thereby obliterated the recognized law of centuries, Lord Coke to the contrary notwithstanding.

So that here the *judgment of the ancients*, and the *"fixed law of centuries,"* is swept away, by the enlight-

ened action of the General Assembly of Maryland, functioning in 1927, and indicating, for the guidance of Courts, a State policy as indicated by its law makers. This being now so in *tort* (heretofore unheard of), shall procedure in actions *ex contractu* be given a narrower and more technically restricted interpretation?

Hence it seems to me the functions of a mere nisi prius judge of today, may well be, after hearing all the facts, to tentatively determine how, in his opinion, as a practical common sense proposition, the case *ought to be decided*. Then to ascertain if it *can be so decided*, without failing to give full force and effect to whatever pronouncements of the law have been made by the Court of Appeals.

I, therefore, approach the question from that angle, and find that we are dealing with a case where one Alfred Jenkins Shriver had, some ten years ago, obtained a judgment for some $5,200 against several defendants on a building contract, secured by bond, wherein one was principal, and several others sureties; that they made themselves joint and severally liable on the contract for its performance; that said Shriver sued them all and got judgment against all defendants; that sometime later he found an opportunity (apparently), to get some money on account of them all from one of the sureties, and that he accepted the same, and entered the judgment "agreed and settled as to G. Howard White only" (upon his paying the costs, and that this was done). How much he received, the record does not show. The common sense business presumption, or *assumption*, as it seems to be, would be that because he collected from a *surety*, and not from the original and primary debtor, such surety did not pay *more* than what would have been his pro rata liability in any attempt in equity to enforce his liability for "contribution among sureties."

In such case, I fail to see where the *liability* of the co-sureties has been in anywise increased by his payment of what was reasonably certain to have been *not more* than his *pro rata share of liability*. The general liability of each and all defendants has been *reduced*, to the extent of whatever may have been his contribution to the reduction of the amount that each surety

may be called upon by his fellow surety to contribute, when contribution is sought to be enforced. Therefore, instead of being *prejudiced*, without his consent, by payment of one surety of *part* of the general liability, they have been *benefited*, and not *injured*.

That brings us to the next inquiry. Is there any law in Maryland to the contrary; in other words, has our Court of Appeals decided otherwise?

Many Maryland decisions from the Gill and Johnson Reports to 148 Md. have been ably presented on both sides, including the cases hereafter referred to, in 5 and 15 Md. and 97 Md., and cases from other States and text writers, but neither side has cited the case of Smith vs. State, 46 Md. 617, which I think is on all fours with the case at bar; and, as I read it, fully justifies the conclusions that I have reached, and at the same time does not do violence to the pronouncements in other cases where there were distinguishing characteristics.

In this case (46 Md. 617), there were sureties on the bond of a tax collector in Baltimore County. Recovery was sought on the bond (as here), and judgment obtained. One of the sureties dies, and his heirs at law wanted to ascertain the extent of the decedent's liability for his pro rata share, as surety, and to pay the same, which the executor of the decedent did, and the clerk was directed to enter the judgment satisfied as against said executor. The entry of satisfaction was not as circumspect even as the entry in this case, where the words are "*agreed and settled as against G. Howard White* ONLY." The intention is manifest, in either case, that the creditor desired to release *only* the one party so making a payment on account of the debt.

Are the abstruse and technical reasonings of Lord Coke going to step into the commercial life of the twentieth century, and be heard to say this cannot be done, and that a creditor must forego a present opportunity of part payment, because of an abstract conception of law formed 300 years ago by the legal minds of that day? Is a debtor to be *denied* an opportunity to discharge a moral obligation (which has become also a legal one), because the reasoning of Lord Coke will not permit him to do so? The same contention was made in the 46 Md. case

which is made here, that the release of one co-surety *operates in law as* the release of the others, notwithstanding the manifest intention of the parties that it shall *not so operate.*

The Court of Appeals in the Smith case (46 Md. 617), said very plainly that such release did *not* increase the liability of the sureties, and was therefore *not* in conflict with that line of well reasoned authorities that if their (sureties) liabilities would be increased by the act of the creditor, his act operates in law to relieve them.

The Court went on to say:

"Payment of Payne's proportion of the judgment, and the subsequent entry of satisfaction against his executor, could not in any manner affect the rights of the co-sureties, or subject them to *increased liability.* The effect of that entry, as far as they are concerned, is to release them from the payment of Payne's proportion of the judgment, and should any of the co-sureties prove insolvent, to release them from the payment of Payne's proportion of the loss, arising from such insolvency."

Motion to quash the execution and strike out the judgment were therefore properly overruled.

Counsel for defendant here cite Yates vs. Donaldson, 5 Md. 389, 397. There the facts are totally different from the case at bar. The Court was there dealing with two original debtors, *without any surety* (though they had as between themselves unequal interests in the property being purchased) and the Court there did not even sanction the doctrine that as between *two debtors,* the release of one releases the other, but said this would only be *not so,* where the remedy against the other was *expressly reserved.* Citing Claget vs. Salomon, 5 G. & J. 354.

Defendant's counsel rely most strongly on Booth vs. Campbell, 15 Md. 569. That was a case of three joint debtors, co-partners, with no sureties in the case. The Court said a release or discharge of one would discharge all * * * "For the just and sufficient reason that he ought not be compelled to pay the money without being entitled to claim contribution from the other defendants, which he cannot do if they have been discharged from the judgment by the act of the plaintiff."

This is the reverse of the case at bar, where the doctrine of contribution

*does* exist, and is enforceable, at the proper time, in an appropriate proceeding to that end.

The entry "agreed and settled as to G. Howard White only," it seems to me, is as *express* a reservation as might well be required to indicate a *clear reservation* of right to proceed against the other sureties. Can there be any doubt that if such reservation were even more formally expressed, that such would be the *legal* effect thereof?

In such limited search as time has permitted on this question, the case most in point seems to be Thompson vs. Lack, 3 C. B. (1846) 540, where the Court said:

"A release of one of two sureties who had entered into a joint and several covenant (as here) to pay an annuity, in default of payment by the grantor, was accompanied by a proviso *that such release should not prejudice* the right of the grantee to enforce its payment against the grantor and the other surety, or either of them.

Held, the proviso *restrained* the operation of the release and that the liability of the co-surety was *not affected* by such release."

George vs. Andrews, 60 Md. 26, merely decided that where "A" buys property subject to a mortgage, *and assumes the mortgage,* "A" thereby becomes the principal debtor, and the original debtor or mortgagor is surety on the mortgage, and that an extension of time of payment of the mortgage to the mortgagor (assuming payment of mortgage), given by the holder of the mortgage, without the knowledge or consent of the original mortgagor (surety), because it works an *increase* of the liability of the surety, *thereby relieves him.*

The case of Cox vs. Md. El. Ry., 126 Md. 300, 305, was merely a case where suit in tort had been brought against the Telephone Company for injury and settled for $2,500 and order filed "agreed and settled and all claims therein satisfied."

Later suit in tort was filed on the same injury against Md. Electric Co. as responsible for the same injury, and on the sufficiency of pleas in bar, the Court held that there could be but *one* recovery for the injury, and that having accepted *settlement in full* for the injury, and entered the release, it made no difference from what source the

money came; that good conscience would not permit an attempted recovery a *second time* for the *same injury*, from someone else.

In Valley Savings Bank vs. Mercier, 97 Md. 458, the Court was dealing with the joint makers of a promissory note for the purchase of a Spanish Jack, and where the signatures had been fraudulently obtained by the creditor supplying the first signer with an amount of money equal to his proportion of the general liability, his signatures being an inducement for the others to sign. It was a case of joint and several liabilities *as original debtors*, but without sureties. The creditor afterwards gave the first signer a written but unsigned receipt for $33 and stating that he is "hereby released from any further payment." The Court refused to consider this operative as a release of the other joint and several obligors.

As to procedure and remedies open to co-sureties in addition to equitable remedies, Poe Pleading (either original or Tiffany edition) says:

Vol. 1, Sec. 113: "Where there are several sureties for the same debt, and one of the sureties pays the debt, he may, under this count (for money paid) recover contribution from his co-sureties, for there is here both the implied request to pay and the implied promise to repay. At law, this right of contribution is according to the number of co-sureties; but in equity a different rule prevails and the recovery is according to their solvency. So, if a surety of a surety pay the debt secured, he may recover on this action against the principal. * * * The rule, as to the right of contribution, and the applicability of this count to recover it is not limited to the case of sureties, but extends to all cases of parties, other than partners, jointly liable ex contractu."

McKew vs. Duvall, 45 Md. 501:

"It would not be consistent with reason or justice that a judgment should be entered to the use of a surety with power to issue execution against a co-surety, upon payment of a mere balance of a judgment, which might be less than the sum that he would be required to contribute to the payment of the whole amount recovered. Other sureties in the judgment might pay much the larger portion of the recovery, and yet, according to the construction contended for by the plaintiff here, the surety making the last payment, and thus satisfying the balance due, would be entitled to have the judgment entered to his use for the purpose of enabling him to sue out execution against his co-sureties in judgment."

At common law, a surety on a bond, upon which judgment has been recovered, had no right, upon paying the amount of the judgment to have it assigned to him, so as to enable him to have execution against his principal or co-surety.

Surety (White) could not have had judgment assigned to him against co-sureties under either common law or cumulative alternate remedy of Sec. 7, Art. 8, Code (Act 1763, Ch. 23, Sec. 8) unless he paid the *whole* of the debt or judgment due. Wilson vs. Ridgely. 46 Md. 235, 247.

The record is silent as to what, if any, money he paid, but if any common sense business presumption, or assumption, were to be indulged in, it would be, that as he was only a surety, he had not paid *more* than would be his proportionate liability under the doctrine of "contribution" (inter se), and therefore the liability of the sureties has not been *increased*. Wilson vs. Ridgely, supra.

That the common law and the statutory provision *are* alternate and cumulative remedies, see Fuhrman vs. Fuhrman, 115 Md. 441.

It seems to me, therefore, that whether considered from the broad ground of common reasoning, without reference to adjudication, or whether considered from the closest technical reasoning of the most critical examination of the cases, (and after a careful re-reading by me of Professor Williston's learned discussion in 25 Harvard Law Review), that the entry in this case of *"agreed and settled as to G. Howard White only,"* filed in a judgment against original debtor and several sureties, does not, under the authorities, operate in law as a release of the other surety Fulton, and *ought not*, in common reason, to so operate. I therefore, will refuse the prayer to take the case from the jury, insofar as such prayer is based on *this* ground.

## II.

This brings us to a consideration of the second proposition: whether Fulton's salary was exempt; that is,

whether on the facts, he is such a person engaged in such employment that his "salary" comes within the broad and liberal interpretation which our Court of Appeals in Moore vs. Heaney, 14 Md. 558, directed to be placed upon it, and its subsequent amendatory provisions as last interpreted in Wilmer vs. Mann, 121 Md. 239. *I think he is one of the class intended to be* exempted from his wages or salary being attached, as that act has been construed by our Court of Appeals. There was cited in the argument, the nisi prius decision of Judge Ulman in 1926 in the case of Lanasa vs. Carozza-Rowe Construction Co., in the Superior Court, where the party whose salary was attached was General Manager, Vice-President of the Company on a salary of $4,800, and held by Judge Ulman to be exempt. At the time of argument, I expressed some doubt as to the correctness of that ruling. I have since sent for the papers and examined that case. No opinion is filed therewith. After examination of the authorities found in a brief of counsel filed therein, I have changed my mind, and now subscribe to that ruling, and make this in accordance therewith, in the present belief that both rulings are within the decisions of the Court of Appeals, and give effect to the *spirit* of the Act.

These notes are now too long even to permit of extracts from the very persuasive cases with which I was impressed in the brief of Charles F. Harley and J. LeRoy Hopkins found in the case above mentioned. I will, therefore, merely refer to Koppen vs. Union Foundry, 163 S. W. (Mo.) 560; Benzinger vs. Ferger, 116 Atl. 516; Lee vs. Emerson, 222 S. W. 283; Bell vs. Ind. Live Stock, 11 S. W. 344; Snyder vs. City of Galveston, 15 S. W. 202; Hartman vs. Mitzel, 8 Pa. Sup. Ct. at p. 24.

Therefore, I am of the opinion that upon ground II and not upon ground I, the case should be withdrawn from the jury as far as the *salary* is concerned.

However, as there is no prayer offered, limited in its terms to *salary*, the first and second prayers of the defendant will be refused, and for the reasons already given. The defendant's third prayer seeks to limit the recovery to the dividends paid on his stock, and the admitted fact is there were two, one in 1925 of $75, and one in 1926 for $60, or a total up to this time of $135. Defendant's third prayer

offered on behalf of the garnishee will accordingly be granted.

I have, gentlemen, in the limited time possible in nisi prius work, made this rough and to me unsatisfactory attempt to give the reasons for my conclusions, because: first, counsel have prepared and presented the exceedingly interesting and technical legal questions with great thoroughness, and counsel are, therefore, entitled to know to what extent the Court has attempted to consider the authorities discussed, and on what ground the Court places its rulings; second, that whatever errors I may have made in the law, or its application to the facts, counsel may the more easily locate them and the Court of Appeals be more readily able to correct.