MANUEL MENDÍA MORALES, Plaintiff and Appellee, *v.* MATHIEU ALFONSI, Defendant and Appellant.

No. 5076. Argued March 4, 1930.—Decided March 27, 1931.

*C. Coll y Cuchí* and *L. R. Polo* for appellant. *R. Cuevas Zequeira* and *H. B. Llenza* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Plaintiff Manuel Mendía and defendant Mathieu Alfonsi subscribed jointly with Compañía General de Cines y Espectáculos a promissory note to Banco Popular de Economías y Préstamos for $10,000 and handed the same over to the said bank upon delivery by it of the said sum to Compañía General de Cines y Espectáculos. Mendía and Alfonsi really acted as solidary sureties.

Time passed and the company failed to pay the obligation. Partial payments were made from time to time, new notes being subscribed and delivered which were signed by Mendía and Alfonsi.

Finally, Mendía having been compelled to pay to the bank the original $10,000 plus $3,335.78 as interest thereon, he brought this suit against Alfonsi to recover from him one-half of the amount so paid by him.

The defendant in his answer admitted the subscription and delivery of the notes and the payment of the original debt and interest, but alleged that he subscribed the notes as "an act of accommodation for the said plaintiff, who advised him that he was not only interested financially in Compañía de Cines y Espectáculos but that he was its largest stockholder, and the defendant, without having any business or other connection with the plaintiff or with the said corporation, consented to indorse the note personally . . . as an act of accommodation for the plaintiff."

The plaintiff moved for a judgment on the pleadings on the ground that, the complaint being verified, it had been answered in such a way that the essential averments thereof were admitted. The court denied the motion.

The case went to trial and both parties introduced evidence. The defendant then moved to amend the answer so as to make it conform to the evidence by the addition of the following defense:

"As a further special defense, the defendant avers that the prom-

issory note referred to in the second paragraph of the complaint was paid by Compañía General de Cines y Espectáculos, by a partial payment of $3,500 made directly to the Banco Popular, and the remainder to the plaintiff himself."

The plaintiff opposed this motion. The court took the matter under advisement and then made a ruling authorizing the amendment and allowing an exception.

Finally, the court delivered an extensive and carefully written opinion and rendered judgment for the plaintiff in the sum of $4,917.89, without special imposition of costs.

The defendant appealed and has assigned the following errors:

"The court erred in holding that the preponderance of the evidence favored the plaintiff-appellee.

"The court erred in adjusting the conflict between the testimony of the plaintiff-appellee and that of the defendant-appellant in favor of the plaintiff.

"The court erred in holding that the plaintiff-appellee had paid to Banco Popular de Puerto Rico the sums mentioned in the judgment.

"The court erred in rendering judgment for the plaintiff."

As may be seen, the issue in the present appeal is whether or not the evidence was properly weighed by the trial court, since the right of Mendía as surety to demand contribution from the other surety, Alfonsi, is supported by the law and the jurisprudence.

Section 1745 of the Civil Code, in its pertinent part, reads thus:

"When there are two or more sureties for the same debtor and for the same debt, the one who has paid it may demand of each of the others the part which he or they should proportionally have paid."

This Court, in *Pérez v. Santiago Bros. et al.*, 37 P.R.R. 15, 17, after citing and examining sections 1745, 1723, 1104, 1107, and 1112 of the Civil Code, expressed itself as follows:

"It seems evident, therefore, that joint debtors may collect one from the other the part owing. The plaintiff and defendant in this

case were jointly responsible among themselves when they signed to accommodate Bautista Rosario.

"The question is not new in this jurisdiction. A similar situation was presented in the case of Hughart v. Estate of Hamill, 15 P.R.R. 289. There under the facts this court made its principal reasoning depend upon section 1112 and held that one of three signers of a promissory note may recover from the estate of the principal debtor. The decision in that case, is however, strengthened by the reference made in section 1723, *supra*. Subsequently, in Crédito y Ahorro Ponceño v. Beiró, 32 P.R.R. 752, this court accepted the doctrine in the Hughart case, but showed that the facts in the case before it were different.

"On the continent, where two persons sign equally for the accommodation of a debtor, there arises an implied contract by reason of the payment, and the other surety must pay his proportion. There under various principles an accommodation party is always a surety. In Maryland a statute somewhat similar to our own was similarly construed in Fuhrman v. Fuhrman, 115 Md. 441. Louisiana has interpreted the rights of accommodation makers among themselves, but the decisions are made to depend upon principles of general commercial law and not upon any special provision of the Civil Code. We, too, think that, where parties *in pais* sign to accommodate a third person, among the two who sign to favor the third there arises an obligation in conformity with the principles of section 1745, *supra*."

See also *Hernández* v. *Delgado,* 31 P.R.R. 541.

It seems advisable to state also that the appellee in his brief insists that a judgment on the pleadings could and should have been rendered, and that the amendment was allowed contrary to law and the adjudicated cases. We will not stop to consider these contentions, but we wish to say that from a slight examination of them we find that they are not lacking in force.

Going into the broader and more favorable ground for the plaintiff which was chosen by the district court as the basis for its decision, we are of the opinion that the judgment must be affirmed.

The trial court in its opinion said:

"From the evidence heard, the court finds that it has been shown that on May 27, 1920, Compañía General de Cines y Espectáculos, acting through its treasurer, Juan B. Soto, and Mathieu Alfonsi and Manuel Mendía Morales subscribed in favor of Banco Popular de Economías y Préstamos a joint promissory note for $10,000 to mature on November 27, 1920; that after the said note had become due, the sum of $2,000 was paid to the bank on November 30, 1920, and a new instrument for $8,000, to mature on February 27, 1921, was issued and subscribed by Compañía General de Cines y Espectáculos, through its treasurer, Jaime Gelabert, and by Mathieu Alfonsi and Manuel Mendía Morales; that this latter instrument was extended and on September 26, 1921, after $1,000 had been paid on account, another promissory note was made and jointly subscribed by Compañía General de Cines y Espectáculos, through its treasurer, Jaime Gelabert, and by Mathieu Alfonsi and Manuel Mendía for $7,000, to mature on December 27, 1921; that on April 18, 1922, after $500 had been paid on account, another promissory note was made and subscribed by the same debtors *in solidum* for $6,500, to mature on June 27, 1922; that thereafter several partial payments were made at different times from September 18, 1922, until May 24, 1927, when the obligation was fully paid.

"It also appears that Manuel Mendía paid as interest the sum of $3,335.78, as alleged in the third paragraph of the complaint, which averment has not been specifically denied by the defendant.

"It has been shown that Manuel Mendía Morales and his wife, Carmen Palés de Mendía, owners of the Victory Garden Theatre Building, located in Santurce, P. R., by a deed dated March 4, 1920, leased said building, together with its cinematograph and furniture, to the corporation known as 'Compañía General de Cines y Espectáculos,' through its treasurer and director, Juan B. Soto, for a term of three years beginning March 1, 1920, renewable for two more years, at a rental of $450 monthly; that the said corporation was operating a cinematograph in the leased building and that Manuel Mendía Morales was not a member of the corporation. Juan B. Soto, to whose statements the court has accorded full credence, testified that one morning, while he was at the University, Malatrasi went to see him to talk to him about bringing an opera company to play at the theatre; that on the afternoon of the same day, he met in his office Malatrasi and Mendía, the latter being the owner of the building but not a stockholder nor an officer of the corporation; that

they discussed the advisability of the corporation bringing under contract an opera company as a business undertaking; that this required that a sum of $10,000 be forwarded to New York to enable the players to come and that the corporation did not have that amount at its disposal, but that there was a bank willing to lend it if it was guaranteed by the corporation, Mr. Mendía, and some other person; that the witness said that he would indorse the obligation as the representative of the corporation but not as individually securing the transaction, and that Mr. Malatrasi then suggested that Mr. Alfonsi would indorse it and submitted his name saying that he had communicated with Mr. Alfonsi, and they agreed that the company be engaged and that Mr. Alfonsi should indorse the note; that the instrument was subscribed subsequently, because it was necessary to go to the bank to procure a blank and to comply with other requirements. Mr. Manuel Mendía Morales testified that he indorsed the note at the request of Mr. Juan B. Soto, in his capacity as treasurer of the corporation, and of its manager, Mr. Toste, gratuitously and to favor the corporation, and although Mr. Soto said nothing in this respect, it appears from his testimony that it was Mr. Malatrasi who, after talking with Mr. Alfonsi, proposed him as an indorser of the note, and that Mr. Alfonsi was the first to subscribe the note, which was brought to him by Mr. Malatrasi; that Mr. Soto then signed on behalf of the corporation, and Mr. Manuel Mendía also signed.

"There is a noticeable conflict between the testimony of Manuel Mendía and that of Mathieu Alfonsi, respectively the plaintiff and the defendant in this action. As already stated, the former testified that he indorsed the note at the request of Mr. Soto and Mr. Toste to favor the corporation; while the latter deposed that Mr. Mendía met him one afternoon at the Paris Bazar and told him that it was intended to bring an opera company to the Victory Garden, that a sum not less than $6,000 was required and that a second indorsement was needed, and that the defendant said to him that he was willing to oblige him; that he had lent his name to Mr. Mendía and not to the corporation. The conflict is solved in favor of the plaintiff.

"It appears from the evidence that on May 27, 1920, Mr. Alfonsi, who is a business man, subscribed the promissory note for $10,000 brought to him by Mr. Malatrasi, who stated that he was sent by Mr. Mendía, Mr. Malatrasi being an employee of Compañía General de Cines y Espectáculos, in charge of the subscription, and

the person who, according to Mr. Soto, had conferred with Alfonsi and said that he would endorse it; that subsequently the defendant also subscribed the other three promissory notes, of February 27, 1921, for $8,000; of December 27, 1921, for $7,000; and of June 27, 1922, for $6,500, presented to him by Jaime Gelabert, the Treasurer of said Compañía de Cines y Espectáculos, without any intervention on the part of the plaintiff; and that on September 22, 1923, Mr. Mendía advised Mr. Alfonsi by letter regarding the notices he had received from Banco Popular, calling his attention to the balance of $4,900 left of the $10,000, informing him of the unsuccessful attempts made by him to have Compañía General de Cines y Espectáculos, as principal debtor, pay the note, and requesting him to find a way for both of them to cancel the obligation as being the only ones responsible after the company had been declared insolvent. Mr. Alfonsi failed to answer this letter or to pay to the bank, notwithstanding the 18 notices sent to him. We do not understand why, if Mr. Alfonsi subscribed the first note for $10,000 solely to oblige Mr. Mendía and not Compañía General de Cines y Espectáculos, he subscribed the subsequent ones, which were brought to him by employees of that company throughout a period of two years, without conferring at all with Mr. Mendía or answering his letter of September 22, 1923, where their joint liability was asserted.

"In view of the evidence, the court holds that Manuel Mendía and Mathieu Alfonsi were sureties for Compañía General de Cines y Espectáculos in the transaction with Banco Popular de Economías y Préstamos; . . .

"The defendant admitted at the trial, and the evidence independently shows, that the plaintiff paid directly to the bank the sum of $6,500, and interest thereon which, according to the third paragraph of the complaint not specifically denied, amounts to $3,335.78. As regards the remaining $3,500 of the principal amount, Mr. Jaime Gelabert testified that he had personally paid said sum to the bank with money belonging to the company, and as Mr. Mendía also testified that at first he used to advance money to Compañía de Cines y Espectáculos to make payments on account, that he used to lend or advance cash to it to pay to the bank, the court gives credence in this connection to the statements of Mr. Gelabert. The plaintiff can not recover from the defendant the sums lent by him to the company, even though it was for the purpose of paying a part of the obligation, because such payments must be considered as having been made by the company and not by the plaintiff. As regards the

other part of the testimony of the said Gelabert, to the effect that the remaining $6,500 (which, as admitted by the defendant, had been paid by Mendía) was also paid by Compañía General de Cines y Espectáculos by assigning to Mendía the furniture in settlement of the arrears of rent and of the note, the same is insufficient to justify such a conclusion, since it is not clearly established what constituted such furniture or its value, nor does the witness remember the total amount owed for rent and on the promissory note. Mr. Mendía, on the other hand, categorically asserted that the company owed him money for arrears of rent and he employed an agent to collect the same, and that it was not true that the company had delivered to him the furniture in payment of the $6,500 and of the rent. According to the deed dated March 24, 1920, the building was leased to the company, together with the furniture, which is itemized as follows: One aluminum screen mounted on the proper frame for the projections; seven hundred iron and wooden armchairs with folding seats; one hundred and eighty common yellow folding chairs; two 'Simplex' cinematograph machines, entirely new and equipped with everything necessary for their operation . . .''

The appellant in his brief transcribes some excerpts from both the testimony of the plaintiff and of the defendant and makes strenuous efforts to show that the testimony of the defendant should prevail, especially if account is taken of the testimony of Jaime Gelabert. However, although the force of his arguments can not be denied, it is not sufficient to overcome the conclusion of the trial court. Instead of passion, prejudice, or bias, everything shows a desire to act rightly and a keen observation on the part of the said court; and, as we have frequently said, the trial court is in a better position than we to judge of the credibility of the witnesses.

There is no doubt that plaintiff Mendía had other dealings with Compañía de Cines y Espectáculos, but it can not be asserted that the company had reimbursed him the sums paid by him in connection with the instrument which forms the basis of this suit. Mendía was the owner of the building leased by the company, and in this sense he was also affected by its failure. It was only natural for Mendía to be interested in the success of the undertaking, but this does not

mean that the transaction carried out in order to help the corporation to procure the funds necessary for the bringing of the opera company was not a separate transaction in itself. It was an independent transaction. It was a bad business both for Mendía and for Alfonsi, but the loss, according to the law, must be divided between both of them. Alfonsi can not evade, no matter how he might try, his share of such loss. It is the consequence of his own acts. Once one's signature is affixed, it is necessary to honor it. If, as he claims, Mendía promised to secure him against all liability, in the same manner that he lent Mendía his signature he ought to have demanded Mendía's signature on another instrument in his favor.

The judgment appealed from must be affirmed.