MANUEL MENDÍA MORALES, demandante y apelado, *v.* MATHIEU ALFONSI, demandado y apelante.

No. 5076.—*Sometido:* Marzo 4, 1930. *Resuelto:* Marzo 27, 1931.

*C. Coll y Cuchí* y *L. R. Polo,* abogados del apelante; *R. Cuevas Zequeira* y *H. B. Llenza,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Manuel Mendía, el demandante, y Mathieu Alfonsi, el demandado, suscribieron, en unión de la Compañía General de Cines y Espectáculos, un pagaré a favor del Banco Popular de Economías y Préstamos por la suma de diez mil dólares y se lo entregaron al entregar el indicado banco a su vez la expresada suma a la Compañía General de Cines y Espectáculos. Mendía y Alfonsi actuaron en verdad como fiadores solidarios.

Pasó el tiempo y la compañía no pagó la deuda. Se

fueron haciendo abonos, firmándose y entregándose nuevos pagarés, todos con las firmas de Mendía y Alfonsi.

Finalmente, alegando Mendía haberse visto obligado a pagar al banco la deuda original de $10,000, con más $3,335.78 de intereses, inició este pleito contra Alfonsi para que le pagara la mitad de lo por él satisfecho.

Contestó el demandado aceptando la firma y entrega de los pagarés y el pago de la deuda original e intereses, pero alegando que firmó "como un acto de acomodamiento para el dicho demandante que le manifestó no sólo que estaba interesado financieramente en los negocios de la Compañía de Cines y Espectáculos sino que era su mayor accionista, y el demandado sin tener nexos comerciales o de ninguna otra clase, con el demandante, ni con la ameritada corporación Compañía General de Cines y Espectáculos, se prestó al otorgamiento de su garantía personal. . . como un acto de acomodamiento a favor del demandante".

Solicitó el demandante sentencia sobre las alegaciones por entender que tratándose de una demanda jurada se había contestado en forma tal, que los hechos esenciales de su reclamación quedaban admitidos. La corte declaró sin lugar la petición.

Fué el pleito a juicio, practicando prueba ambas partes. La demandada pidió entonces que se le permitiera enmendar su contestación para conformarla a la prueba, agregándole la siguiente defensa:

"Como otra defensa especial el demandado alega que el pagaré a que se refiere el párrafo segundo de la demanda fué satisfecho por la compañía General de Cines y Espectáculos, parte hasta $3,500 directamente al Banco Popular; y el resto al propio demandante."

Se opuso el demandante. La corte se reservó su resolución que dictó luego, permitiendo la enmienda y reservando una excepción al demandante.

Finalmente la corte, basándose en una amplia y cuidadosa relación del caso y opinión, dictó sentencia concediendo al

demandante parte de su reclamación, o sea $4,917.89, sin especial condenación de costas.

No conforme el demandado, apeló, asignando como errores los que siguen:

"La corte erró al declarar que la preponderancia de la prueba en este caso estaba a favor del demandante y apelado.

"La corte erró al resolver el conflicto entre las declaraciones del demandante y apelado y del demandado y apelante a favor del demandante.

"La corte erró al declarar que el demandante apelado pagó al Banco Popular de Puerto Rico las sumas especificadas en la sentencia.

"La corte erró al declarar con lugar la demanda."

■■ Como puede verse, trátase en este caso, en última instancia, sólo de si la prueba fué o no debidamente apreciada por el tribunal sentenciador, ya que el derecho del fiador Mendía a reclamar del otro fiador Alfonsi está consagrado por la ley y la jurisprudencia.

El artículo 1745 del Código Civil, en lo pertinente, dice:

"Cuando son dos o más los fiadores de un mismo deudor y por una misma deuda, el que de ellos la haya pagado podrá reclamar de cada uno de los otros la parte que proporcionalmente le corresponda satisfacer."

Y esta Corte Suprema, en el caso de *Pérez* v. *Sociedad Agrícola Santiago Hermanos,* 37 D.P.R. 15, después de citar y analizar los artículos 1745, 1723, 1104, 1107 y 1112 del Código Civil, se expresó así:

"Por tanto, parece evidente que deudores solidarios pueden cobrarse el uno del otro la cantidad adeudada. El demandante y la demandada en este caso eran solidariamente responsables entre sí cuando firmaron para ayudar à Bautista Rosario.

"La cuestión no es nueva en esta jurisdicción. Una situación parecida se presentó en el caso de *Hughart* v. *Sucesión Hamill,* 15 D.P.R. 308. De acuerdo con los hechos de dicho caso la corte basó su razonamiento principal en el artículo 1112 y resolvió que uno de los tres otorgantes de un pagaré puede recobrar de la sucesión del deudor principal. La decisión en dicho caso está, sin embargo, fortalecida por la referencia hecha en el artículo 1723, *supra.* Poste-

riormente, en el caso de *Crédito y Ahorro Ponceño* v. *Beiró,* 32 D.P.R. 817, esta corte aceptó la doctrina del caso de Hughart, pero demostró que los hechos del caso que tenía ante sí eran distintos.

"En los Estados Unidos continentales, cuando dos personas firman por igual para ayudar a un deudor surge un contrato implícito por razón del pago, y el otro fiador debe pagar su proporción. Allá, según varios principios un firmante de favor es considerado siempre como un fiador. En Maryland un estatuto algo similar al nuestro fué igualmente interpretado en el caso de *Fuhrman* v. *Fuhrman,* 115 Md. 441. Louisiana ha interpretado los derechos de los firmantes de favor entre sí, pero las decisiones se hacen depender de principios de ley comercial en general y no de algunas disposiciones especiales del Código Civil. Nosotros también creemos que cuando partes *in pais* firman para ayudar a un tercero, entre las dos que firman para favorecer al tercero, surge una obligación de conformidad con los principios del artículo 1745, *supra.*"

Véase también el caso de *Hernández* v. *Delgado,* 31 D.P. R. 570.

Parece conveniente hacer constar además que la parte apelada en su alegato insiste en que pudo y debió dictarse una sentencia sobre las alegaciones, y en que la enmienda permitida lo fué en contra de la ley y la jurisprudencia. No nos detendremos en el análisis de esas contenciones, pero deseamos decir que del ligero estudio que de ellas hemos hecho, encontramos que no están desprovistas de razón.

Yendo al campo más amplio y favorable para el demandado que fué el que escogió la corte de distrito para dictar su fallo, entendemos que la sentencia debe confirmarse.

La corte sentenciadora, en su dicha relación del caso y opinión, dijo:

"Por el resultado de la prueba practicada, la corte estima demostrado que allá el 27 de mayo, 1920, la Compañía General de Cines y Espectáculos, por su tesorero Juan B. Soto, Mathieu Alfonsi y Manuel Mendía Morales, suscribieron a favor del Banco Popular de Economías y Préstamos, una obligación solidaria por la suma de $10,000 a vencer el 27 de noviembre de 1920; que vencida esta obligación, el 30 de noviembre de 1920, se pagó al banco la suma de $2,000 y se extendió una nueva obligación por $8,000, con las firmas

de Compañía General de Cines y Espectáculos, por su tesorero Jaime Gelabert, Mathieu Alfonsi y Manuel Mendía Morales, a vencer el 27 de febrero de 1921; que este pagaré se prorrogó, y en 26 de septiembre, 1921, después de haberse hecho un abono de $1,000.00, se extendió otra obligación, con las firmas solidarias de la Compañía General de Cines y Espectáculos, por su tesorero Jaime Gelabert, Mathieu Alfonsi y Manuel Mendía, por el montante de $7,000 a vencer el 27 de diciembre, 1921; que en 18 de abril, 1922, después de haberse hecho un abono de $500, se extendió otro pagaré, con las mismas firmas de deudores solidarios, por la suma de $6,500, a vencer el 27 de junio, 1922; que se hicieron entonces abonos en distintas fechas desde septiembre 18, 1922, hasta mayo 24, 1927, en cuya fecha quedó totalmente pagada la obligación.

"Aparece también que se pagaron intereses por Manuel Mendía, ascendentes a la suma de $3,335.78, según se alega en el hecho 3 de la demanda que está jurada, y que el demandado no ha negado específicamente.

"Se ha demostrado que Manuel Mendía Morales y su esposa Doña Carmen Palés de Mendía, siendo dueños del edificio Teatro Victory Garden, sito en Santurce, P. R., por escritura de 4 de marzo de 1920, lo dieron en arrendamiento, incluyendo su instalación cinematográfica, y mobil'ario, a la corporación denominada 'Compañía General de Cines y Espectáculos', por su tesorero y director Don Juan B. Soto, por el término de 3 años, desde el 1 de marzo, 1920, prorrogable a dos años más, y canon de $450.00 mensuales; que dicha corporación explotaba el negocio de cinematógrafo en el edificio arrendado; y que Manuel Mendía Morales no formaba parte de la misma. Declaró Don Juan B. Soto, persona que ha merecido entero crédito para la corte, que encontrándose una mañana en la Universidad, fué a verle el Sr. Malatrasi para hablarle de traer una compañía de ópera a trabajar en el teatro; que en la tarde del mismo día se reunió en su oficina con los señores Malatrasi y Mendía, éste que era el dueño del edificio pero no accionista ni oficial de la corporación, y se discutió la conveniencia de traer contratada por la corporación, una compañía de ópera bajo el punto de vista del negocio; que era necesario para ello enviar a New York una suma de $10,000 para que pudiera venir y la corporación no la tenía disponible, pero que un banco estaba dispuesto a prestarla con la firma de la corporación, del señor Mendía, y de otra persona; que el testigo manifestó que él firmaría como representante de la corporación, pero no garantizando individualmente la operación, y entonces el señor Malatrasi sugirió que el Sr. Alfonsi firmaría, presentó su nombre diciendo que él había visto al

Sr. Alfonsi, y se llegó a la conclusión que se traería la compañía y que el señor Alfonsi firmaría el pagaré; y que el documento se firmó posteriormente porque era necesario ir al banco a obtener el impreso y llenar los requisitos. Declaró Don Manuel Mendía Morales que él prestó su garantía a solicitud de Don Juan B. Soto, como tesorero de la corporación, y de su manager señor Toste, gratuitamente y como un favor a la corporación, y aunque nada manifestó el Sr. Soto sobre ese particular, de su testimonio resulta que quien presentó el nombre de Mathieu Alfonsi para firmar el pagaré, después de haber hablado con él, fué el señor Malatrasi, y dicho señor Alfonsi fué el primero que firmó la obligación por $10,000 llevada a él por el señor Malatrasi, haciéndolo luego el Sr. Soto por la corporación, y Manuel Mendía. El Sr. Malatrasi no declaró en el juicio.

"Existe notable contradicción entre las declaraciones de Manuel Mendía y Mathieu Alfonsi, que son las partes demandante y demandada en este pleito. El primero declaró, como antes se ha expresado, que él suscribió el documento a solicitud de los señores Soto y Toste, como un favor a la corporación; mientras que el segundo manifestó que en el París Bazar se le presentó una tarde el Sr. Mendía, diciéndole que se trataba de traer una compañía de ópera para el Victory Garden, que se necesitaba para ello una cantidad no menor de $6,000 y que hacía falta una segunda firma, y que el demandado le contestó que no tenía inconveniente en complacerle, habiendo dado la firma al señor Mendía y no a la compañía. Se resuelve el conflicto a favor del demandante.

"Aparece de la prueba que el señor Alfonsi, que es hombre de negocios, firmó en 27 de mayo de 1920 el pagaré por $10,000 que le llevó el Sr. Malatrasi, con la sola manifestación de que era mandado por Mendía, siendo el Sr. Malatrasi un empleado de la Compañía General de Cines y Espectáculos, encargado del abono y la persona, que según el Sr. Soto, había hablado con Alfonsi y manifestado que lo firmaría; que con posterioridad el demandado firmó también los otros tres pagarés de febrero 27, 1921, por $8,000; de diciembre 27, 1921, por $7,000; y de junio 27, 1922, por $6,500, que le presentara Jaime Gelabert, Tesorero de la Compañía de Cines y Espectáculos, sin que en ello tuviera intervención alguna el demandante; y que en septiembre 22, 1923, el Sr. Mendía escribió al Sr. Alfonsi, comunicándole los avisos que había recibido del Banco Popular, llamándole la atención del balance que restaba de los $10,000 o sea la suma de $4,900, comunicándole las gestiones que había practicado con la principal deudora Compañía General de Cines y Espectáculos para que pagara la deuda, las que habían resultado infructuosas, y

pidiéndole que viera la forma de cancelar ambos la deuda como únicos responsables después de la insolvencia de la compañía. Nada contestó a esta carta el señor Alfonsi, ni nada pagó al banco, a pesar de los 18 avisos que se le remitieron. No comprendemos cómo si el señor Alfonsi firmó el primer pagaré por $10,000 únicamente para complacer al Sr. Mendía y no a la Compañía General de Cines y Espectáculos, firmara luego los subsiguientes, llevados todos por empleados de la compañía, durante un período de dos años, sin hablar nada con el señor Mendía, ni contestar su carta de septiembre 22 de 1923, en donde le establece la responsabilidad de ambos.

"Por el resultado de la prueba, la corte estima que Manuel Mendía. y Mathieu Alfonsi eran fiadores de la Compañía General de Cines. y Espectáculos en la operación con el Banco Popular de Economías. y Préstamos; . . .

"El demandado admitió en el juicio y la prueba también lo demuestra, que el demandante satisfizo directamente al banco la suma. de $6,500 y los intereses, que según el hecho 3 de la demanda, no negado específicamente, ascienden a la suma de $3,335.78. En cuanto a los $3,500 restantes del capital, declaró el Sr. Jaime Gelabert que él los satisfizo personalmente al banco con dinero de la compañía, y como el Sr. Mendía también declaró que al principio daba dinero a la Compañía de Cines y Espectáculos para hacer abonos a cuenta, que le prestaba o anticipaba dinero para que fueran al Banco a pagar, la corte da crédito en ese respecto al Sr. Gelabert. No puede el demandante recobrar del demandado las cantidades que él prestara a la compañía, aunque fuera para satisfacer parte de la deuda, porque los pagos así realizados se consideran como de la compañía y no del demandante. En cuanto a la otra parte del testimonio de Gelabert, referente a que los $6,500 restantes, que el demandado admitió que los había pagado Mendía, los satisfizo también la Compañía General de Cines y Espectáculos, traspasándole el mobiliario en pago de los arrendamientos debidos y del pagaré, es insuficiente para llegar a esa conclusión, pues no se establece claramente en qué consistía ese mobiliario, su valor, ni recuerda el testigo a cuánto ascendía la deuda por concepto de arrendamientos y del pagaré; y por el contrario afirmó el Sr. Mendía, de manera categórica, que la compañía le debía rentas atrasadas y puso un interventor para cobrarlas, no siendo cierto que la compañía para el pago de los $6,500 y las rentas, le entregara el mobiliario. Según la escritura de 24 de marzo de 1920, el edificio fué arrendado a la compañía con su mobiliario, que se detalla así: Un lienzo de aluminio montado en su correspondiente cuadro para las proyecciones; setecientas butacas de hierro y ma-

dera, con brazos y plegadizos los asientos; ciento ochenta sillas de tijeras, corrientes, amarillas; dos máquinas de cinematógrafo, 'Simplex', completamente nuevas y equipadas de todo lo necesario para el funcionamiento. . . . ''

En su alegato el apelante transcribe parte del testimonio de ambos, demandante y demandado, y hace grandes esfuerzos por demostrar que debe prevalecer el del demandado, especialmente teniendo en cuenta la declaración de Jaime Gelabert. Sin embargo, aunque no puede negarse la fuerza de sus argumentos, no es dicha fuerza bastante para destruir la conclusión del tribunal sentenciador. En vez de pasión, prejuicio o parcialidad, todo revela deseo de acertar y juiciosa observación por parte de dicho tribunal, y, como tantas veces se ha dicho, él estaba en mejores condiciones que nosotros para juzgar de la veracidad de los testigos.

No hay duda alguna que el demandante Mendía tenía otras relaciones con la Compañía de Cines y Espectáculos, pero no puede asegurarse que la empresa le pagara lo que él pagó en relación con el documento base de este pleito. Mendía era el dueño del edificio arrendado por la compañía y él también en ese sentido quedó envuelto en el fracaso de la misma. Era natural que Mendía tuviera interés en el éxito del negocio de la empresa, pero ello no quiere decir que la operación de ayudarla a conseguir el dinero necesario para traer la compañía de ópera, no tuviera vida separada por sí misma. Fué un negocio independiente. Un mal negocio tanto para Mendía como para Alfonsi, pero el mal, de acuerdo con la ley, debe distribuirse entre ambos. Alfonsi no puede eludir, por más esfuerzos que haga, la parte que le toca. Es la consecuencia de sus propios actos. Puesta una firma, precisa honrarla. Si como dice, Mendía le prometió garantizarlo contra toda responsabilidad, debió lo mismo que él le daba su firma a Mendía, exigir que Mendía le diera la suya a él en otro documento.

*Debe confirmarse la sentencia recurrida.*